IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
Huntington Division

| | |
|---|---|
| JOHN McCORMICK and ALICE McCORMICK, on behalf of all other individuals similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK d/b/a WELLS FARGO HOME MORTGAGE, and SAMUEL I. WHITE, P.C.,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 3:08cv944<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT
## OF SAMUEL I. WHITE, P.C.'S MOTION TO DISMISS

Defendant Samuel I. White, P.C. ("SIWPC"), by counsel, submits this Memorandum in Support of its Motion to Dismiss Counts I and III of Plaintiffs' Amended Complaint.

## I.  PROCEDURAL HISTORY

Plaintiffs filed their Amended Complaint, attached to the Motion to Dismiss as Exhibit 1,[1] on or about July 2, 2008 against SIWPC and Wells Fargo Bank, N.A. ("Wells Fargo"). The Amended Complaint generally contains allegations of impropriety in both the origination and underwriting of Plaintiffs' loan from Wells Fargo and in the Defendants' attempt to collect on that loan. Count I asserts a class claim against SIWPC for allegedly violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by including language

---

[1]  SIWPC attaches all relevant exhibits to the Motion to Dismiss filed contemporaneously herewith pursuant to Local Rule of Civil Procedure 7.1(a).

in a dunning letter,[2] attached as <u>Exhibit 2</u>,[3] that Plaintiffs claim overshadows or contradicts Plaintiffs' FDCPA rights.  Count II alleges that SIWPC made a false representation in attempting to collect a debt in violation of the West Virginia Consumer Credit Protection Act.  Count III claims that SIWPC[4] violated some aspect of West Virginia law when SIWPC attorneys acted as a substitute trustee under the Deed of Trust, attached as <u>Exhibit 3</u>,[5] securing Plaintiffs' debt to Wells Fargo.  The remaining counts are directed to Wells Fargo only.  SIWPC now seeks dismissal of Count I and Count III for failure to state a claim.  In addition, the allegations in Count III fail to give rise to an actual controversy and/or suffer from mootness.

## II.     ALLEGED FACTS[6]

The facts relevant to the claims against SIWPC are as follows.  Plaintiffs received an adjustable rate loan from Wells Fargo.  (Am. Compl. ¶6.)  In connection with that loan, the Plaintiffs executed the Deed of Trust, <u>Ex. 3</u>, in favor of Wells Fargo.  (Am. Compl. ¶8.) Plaintiffs became delinquent on their loan payments.  Thereafter, on April 8, 2008, Wells Fargo

---

[2]     A dunning letter is a demand for payment from a delinquent debtor.  BLACK'S LAW DICTIONARY 502 (6th ed. 1990).

[3]     Plaintiffs purport to reproduce the letter in Paragraph 11 of the Amended Complaint, but the reproduction contains numerous typos and mistakes.  SIWPC therefore attaches an actual copy of the letter as an exhibit.

[4]     It is unclear whether Count III is also directed at Wells Fargo.

[5]     Plaintiffs refer to and quote from the Deed of Trust (Am. Compl. ¶8), but do not attach the relevant document.  The existence and terms of the Deed of Trust are central to the case.  *See infra*, note 6.

[6]     For purposes of a motion to dismiss, the allegations made in the Amended Complaint are admitted, and any reasonable inferences to be drawn from them are accepted as true.  *Hosp. Bldg. Co. v. Trs. of the Rex Hosp.*, 425 U.S. 738 (1978).  Accordingly, SIWPC does not agree with Plaintiffs' Amended Complaint, but for purposes of this motion, it is taken as true.  The Exhibits attached to the Motion to Dismiss are documents that are referenced in the Amended Complaint and/or are central to Plaintiffs' claims.  The documents can be considered by the Court in ruling on a motion to dismiss.  *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994) (affirming lower court's consideration of document referenced in complaint); *Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997) ("An exception to the general rule is made for documents which are referred to in the Complaint and upon which Plaintiff relies in bringing the action."); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280 (E.D. Va. 1995) *aff'd.*, 103 F.3d 351 (4th Cir. 1996) (documents attached to motion to dismiss considered part of the pleadings if referred to in  complaint and central to claim).

executed a Substitution of Trustee, attached as <u>Exhibit 4</u>,[7] removing the original trustee under the Deed of Trust and replacing him with four SIWPC attorneys.  (Am. Compl. ¶ 10.)   The Substitution was recorded by the Clerk of Cabell County, West Virginia on April 24, 2008 and became effective on that date.  On or about April 15, 2008, Plaintiffs received the dunning letter, <u>Ex. 2</u>, which provided them with various information regarding the collection of their debt. (Am. Compl. ¶¶ 11-14.)

Plaintiffs allegedly called SIWPC on April 21, 2008 in order to reinstate their loan but were allegedly told that they could not reinstate by paying the arrearage and could only keep their property if they paid the full payoff amount.  Plaintiffs again allegedly contacted SIWPC on April 22, 2008 and received the same instructions.  Plaintiffs thereafter filed this suit.

### III.    <u>ARGUMENT</u>[8]

#### A.    <u>Count I Fails as a Matter of Law Because the Dunning Letter Does Not Violate the FDCPA.</u>

##### 1.    <u>Legal Standard for a Claim of Violation of 15 U.S.C. § 1692g</u>

Plaintiffs allege that the dunning letter sent to them violates the FDCPA, specifically 15 U.S.C. § 1692g.  That Section requires that when a debt collector solicits payment from a consumer, it must, in the initial communication or within five days of an initial communication, provide the consumer with a written "validation notice" that must include the following information: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by

---

[7]      Plaintiffs refer to the Substitution of Trustee (Am. Compl. ¶10), but do not attach the relevant document. The existence and terms of the Substitution of Trustee are central to the case.  *See supra*, note 6.

[8]      This Court set forth the appropriate post-*Twombley* Rule 12(b)(6) standard of review in its decision in *Snider v. Divittis*, Civil Action No. 3:07cv335, 2008 U.S. Dist. LEXIS 19212, at *5-6 (S.D. W. Va. Mar. 10, 2008) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).  That discussion is incorporated by reference herein.

the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.  15 U.S.C. § 1692g(a); *see also Rhoades v. W. Va. Credit Bureau Reporting Servs., Inc.*, 96 F. Supp. 528, 531 (S.D.W. Va. 2000) (listing the requirements of § 1692g(a)).

The FDCPA further provides that "if the consumer notifies the debt collector in writing within the thirty day period . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection . . . until the debt collector obtains verification of the debt . . . and a copy of such verification is mailed to the consumer by the debt collector."  15 U.S.C. § 1692g(b).  It follows, then, that unless and until the consumer requests validation in writing, the debt collector may continue with its collection efforts.  *Miller v. Payco Gen. Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991).[9]

However, mere technical compliance with the requirements of § 1692g(a) will not always suffice to satisfy the FDCPA.  If the validation notice is presented in such a way that it is not easy to read or is not prominent, the communication does not satisfy the FDCPA.  Similarly, if the remainder of the debt collector's communications or action would contradict or overshadow the consumer's validation rights, the FDCPA is not satisfied.  *See, e.g.*, *Olson v. Risk Mgmt. Alternatives, Inc.*, 366 F.3d 509, 512 (7th Cir. 2004); *United States v. Nat'l Fin.*

---

[9]     *See also Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 659 (S.D.N.Y. 2006) ("Nothing in the FDCPA prevents a debt collector that has not received a request for validation or other reply from a consumer from continuing to attempt to collect the debt during the 30-day validation period . . . .").

*Servs., Inc.* 98 F.3d 131, 139 (4th Cir. 1996); *Payco*, 943 F.2d at 482. Claims of such tactics by debt collectors are typically phrased as claims of overshadowing or contradiction. *See Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 154 n.2 (E.D.N.Y. 2005) ("The terms 'overshadow' and 'contradict' are terms of art under the FDCPA.").

Whether the validation notice is effectively conveyed is determined by whether the "least sophisticated consumer" would be left uncertain as to his or her validation rights after receiving the communication in question. *Nat'l Fin. Servs.*, 98 F.3d at 135-36; *Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp. 411, 416 (E.D. Va. 1997). The least sophisticated consumer is "uninformed, naïve, or trusting" but is capable of making "basic, reasonable and logical deductions and inferences." *Spira*, 358 F. Supp. 2d at 156. "While protecting naïve consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Nat'l Fin. Servs.*, 98 F.3d at 136. Numerous courts, including courts from within the Fourth Circuit, have indicated that whether validation rights are contradicted or overshadowed is a question of law, subject to a motion to dismiss. *See, e.g.*, *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000) ("We agree with the majority [of circuits] that whether language in a collection letter contradicts or overshadows the validation notice is a question of law."); *Dikun v. Streich*, 369 F. Supp. 2d 781, 786 (E.D. Va. 2005) (granting motion to dismiss on overshadowing/contradiction claim).[10]

---

[10]     *See also Parker v. CMRE Fin. Servs., Inc.*, No. 07cv1302, 2007 U.S. Dist. LEXIS 82272, at *11 (S.D. Cal. Nov. 5 2007) (granting motion to dismiss on overshadowing/contradiction claim); *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 155 (E.D.N.Y. 2005) ("With respect to the issues presented by the parties, including whether language in a debt-collection letter overshadows or contradicts other language in an impermissible fashion, they are questions of law."); *Wallace v. Capital One Bank*, 168 F. Supp. 2d 526, 529 (D. Md. 2001) (granting motion to dismiss on overshadowing/contradiction claim); *see also Nat'l Fin. Servs., Inc.* 98 F.3d at 137 ("[T]hey contend that this disagreement as to the meaning of the language of the notices is a question of fact for the jury. We disagree.").

2.      **The Dunning Letter Does Not Overshadow or Contradict a Consumer's Validation Rights.**

Count I states that the letter violates the FDCPA in two ways.  First, Plaintiffs assert that the letter violates the FDCPA "by making threats to proceed to foreclose [sic] sale during the debt validation period in such a manner that overshadows the notice of validation rights."  (Am. Compl. ¶ 18(a).)  The "threats" to which Plaintiffs refer are, in reality, the following statement set forth at the bottom of the first page of the letter, immediately following the validation notice: **PLEASE BE ADVISED THAT DURING THE THIRTY (30) DAY PERIOD, THIS FIRM WILL NOT DELAY OR CEASE WITH ITS COLLECTION OF THE DEBT.**  Ex. 2, at 1.  Second, Plaintiffs assert that the letter violates the FDCPA by "contradicting the consumer's right to seek oral verification of the debt."  (Am Compl. ¶ 18(b).)  SIWPC explains why these claims fail *infra*.  First, however, it is useful to understand the typical successful overshadowing/contradiction claim because once one knows what *does* overshadow or contradict validation rights, it is clear that the letter received by Plaintiffs *does not*.

a.      **Explanation of Legitimate Overshadowing/Contradiction Claims**

Successful overshadowing/contradiction claims can be separated into two general categories—substantive and visual.  Most overshadowing/contradiction cases involve letters with indicia of substantive and visual contradiction/overshadowing at the same time, *see, e.g.*, *Payco*, 943 F.2d 482 (finding FDCPA violation where letter substantively contradicted validation rights and visually overshadowed validation notice), but the two concepts are distinct.

Substantive contradiction or overshadowing focuses on whether the substance of the messages in a debt collection notice contradict themselves or operate to overshadow the consumer's statutory rights.  These claims typically involve debt collection notices that demand immediate action—usually payment—by the consumer, which cuts against the availability of the

thirty-day validation period. *See, e.g.*, *Payco*, 943 F.2d at 484 (stating that where a letter insisted upon immediate action, "[t]he emphasis on immediate action also stands in contradiction to the FDCPA, which provides consumers a thirty day period to decide to request a validation."). Some letters that fall into this category go beyond nebulous demands for "immediate" action and demand that the debtor take some action within a period less than the thirty days from receipt provided for in the validation period. For example, in *Morgan v. Credit Adjustment Bd., Inc.* 999 F. Supp. 803 (E.D. Va. 1998), the dunning letter, sent June 13, 1996, stated:

> An important matter demanding your immediate attention has been reported to this office. You should contact this office not later than *June 20, 1996* to conclude this matter.
>
> *IMPORTANT-- To stop further action, pay your account in full to this office. Return this letter with your payment in order to receive proper credit.

999 F. Supp. at 804. The court concluded that a demand for action seven days from the date of the letter contradicted the debtor's validation rights. The least sophisticated consumer might be confused about his thirty-day validation right when confronted with a notice that demands that he make arrangements to pay "immediately" or within seven days. Examples of cases involving similar substantive overshadowing and contradiction are cited in <u>Appendix A</u> to this Memorandum.

The second general category of successful claims involves claims of "visual" or "format" overshadowing/contradiction. These claims focus on the manner in which the validation notice is conveyed to the consumer in the context of the entire letter. Practices that visually violate the FDCPA include placing the validation notice on the back of the letter without referencing it on the front of the letter, *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 177 (W.D.N.Y. 1988), printing the validation notice in small, hard to read font, or printing it in

"normal" font while printing everything else in large, bombastic font.  For instance, in *Payco* the

Fourth Circuit held that a letter with the following description violated the FDCPA:

> Across the top of the one page form is the title, "DEMAND FOR PAYMENT," in large, red, boldface type. . . . In the middle of the page, again in large, red, boldface type, is the statement, "THIS IS A DEMAND FOR IMMEDIATE FULL PAYMENT OF YOUR DEBT."  That statement is followed by these sentences in black boldface type: YOUR SERIOUSLY PAST DUE ACCOUNT HAS BEEN GIVEN TO US FOR IMMEDIATE ACTION.  YOU HAVE HAD AMPLE TIME TO PAY YOUR DEBT, BUT YOU HAVE NOT.  IF THERE IS A VALID REASON, PHONE US AT [telephone number] TODAY.  IF NOT, PAY US -- NOW.  The bottom third of the document is almost completely filled by the single word, "NOW," in white letters nearly two inches tall against a red background.
>
> At the very bottom of the page, in the smallest type to appear on the form (letters one-eighth of an inch high), is the statement, "NOTICE:  SEE REVERSE SIDE FOR IMPORTANT INFORMATION."  The notice is printed in white against a red background.  On the reverse of the document are four paragraphs printed in gray ink.  The last three paragraphs contain the validation notice . . . .

943 F.2d at 483.  The Fourth Circuit concluded that the other statements—printed in large, bold,

colored lettering—overshadowed the validation notice, printed in gray ink.  The *Payco* court

went on to state that "[s]creaming headlines, bright colors and huge letters all point to a

deliberate policy on the part of the collector to evade the spirit of the notice statute, and mislead

the debtor into disregarding the notice."  *Id.* at 484 (citations omitted).  A review of the visual

overshadowing cases reveals that the vast majority of cases, like *Payco*, involve visual or format

overshadowing in conjunction with substantive contradiction/overshadowing, as opposed to a

violation based solely on formatting or font choices.  Examples of cases involving visual

overshadowing and contradiction are cited in <u>Appendix A</u> to this Memorandum.

Against this summary of what does constitute overshadowing or contradiction, it is apparent that Plaintiffs' letter does not. The sentence of which Plaintiffs complain—"Please be advised that during the thirty (30) day period, this firm will not delay or cease with its collection of the debt"—does *not* substantively contradict or overshadow Plaintiffs' right to validate their debt within thirty days. It does *not* demand immediate action and does *not* impose any time limit upon Plaintiffs different than the thirty-day period. It simply clarifies for the Plaintiffs that the thirty-day period is not a grace period. *See, e.g. Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 416 (7th Cir. 2005) ("This validation period, however, is not a grace period: a debt collector is perfectly free to demand payment and pursue collection efforts, including an appropriate lawsuit against the debtor, within the validation period. Thus, during the validation period, the debtor's right to dispute coexists with the debt collector's right to collect.").

Moreover, the manner in which the allegedly offensive sentence is presented in relation to the validation notice does not come close to the cases discussing visual overshadowing. The validation notice is presented on the first page of the letter, in normal, easy-to-read font, in the first paragraph. Then, the allegedly offensive sentence appears immediately after the validation notice. The only thing different about this sentence is that it is in bold and capital letters. However, the mere fact that the sentence is in bold or capital letters does not mean that it overshadows the validation notice. It would only overshadow the validation notice if it made the notice harder to read or less likely to be read, which it does not. *See, e.g.*, *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1131 (N.D. Ill. 1999) (rejecting overshadowing claim when validation notice appeared in smaller text than rest of letter and stating "the validation notice need only be large enough to be easily read and sufficiently prominent to be noticed by an

unsophisticated consumer").   Moreover, unlike the majority of overshadowing cases, the sentence does not include harsh, threatening, or mandatory language.

The fundamental question is whether the hypothetical least sophisticated consumer would be confused as to his rights after reading the entire letter.  Would he read the validation notice and then read the sentence in question and think that, despite what the letter said in the previous three sentences about validation, he may not seek validation because the debt collector has said it will continue with collection efforts?  Nothing about the sentence contradicts or overshadows Plaintiffs' validation rights.   The interpretation of the letter advanced by Plaintiffs is forced, paradoxical, and unreasonable.

### b.   The Letter Does Not Contradict any Oral Rights of the Consumer.

Plaintiffs allege that the letter "violates 15 U.S.C. § 1692g by contradicting the consumer's right to seek oral verification of the debt."  (Am. Compl. ¶ 18(b).)  Under the FDCPA, a consumer has no right to oral *verification* of the debt.  Rather, the consumer arguably has a right to orally *dispute* the debt.  Section 1692g(a)(3) requires the notice to include a statement that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid."  Because this subsection is silent as to the medium of dispute, the consumer arguably may do so orally, and such an oral dispute may result in the collector not being able to presume the validity of the debt.[11]  However, § 1692g(a)(4) requires that a consumer notify the debt collector *in writing* that the debt is disputed in order to obtain *verification* of the debt.  Therefore, Plaintiffs' allegation

---

[11]      *But see Graziano v. Harrison*, 950 F.2d 107, 111-12 (3d Cir. 1991) (holding that a § 1692g(a)(3) dispute must be in writing and stating "Adopting Graziano's reading of the statute would thus create a situation in which, upon the debtor's non-written dispute, the debt collector would be without any statutory ground for assuming that the debt was valid, but nevertheless would not be required to verify the debt or to advise the debtor of the identity of the original creditor and would be permitted to continue debt collection efforts."); *Wallace v. Capital One Bank*, 168 F. Supp. 2d 526, 529 (D. Md. 2001) (holding that debt collector may require that all disputes be in writing).

that the letter somehow contradicts their right to oral verification fails as a matter of law because they had no right to oral verification.

Even assuming Plaintiffs meant to allege that the letter contradicts their right to dispute the debt orally, a quick glance at the letter indicates otherwise.  The letter states that "unless you, within thirty (30) days after the receipt of this notice, dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid by this firm."  (Ex. 2 at 1.)  Nothing in this sentence requires that the dispute be in writing.  Therefore, Plaintiffs' claim of contradiction fails as a matter of law for two reasons:  consumers have no right to oral verification and the letter does not require that disputes be made in writing.

### c. A Debt Collector May State that Debt Collection Will Not Cease.

As stated above, Plaintiffs allege that the statement "Please be advised that during the thirty (30) day period, this firm will not delay or cease with its collection of the debt" overshadows their validation rights.  (Am. Compl. ¶18(a).)  All cases located that involve similar language hold that such language does not overshadow validation rights.

In *Sims v. GC Servs. L.P.*, 445 F.3d 959 (7th Cir. 2006), the dunning letter, in addition to the validation notice, stated: "Avoid further collections.  Forward your overdue payment."; "If you do not make full payment or call us . . . we will continue with scheduled collection efforts per our obligation to MCI.  It is in your best interest to forward your payment."; and, "*We intend to continue with collection efforts until this matter is handled. Fulfill your obligation and forward your payment.*"  *Sims v. GC Servs. L.P.*, No. 03cv4077, 2005 U.S. Dist. LEXIS 41878, at *8-9 (C.D. Ill. Mar. 16, 2005) (emphasis added).  The *Sims* plaintiffs filed a class claim alleging that this language, and the manner in which it was presented, overshadowed and contradicted the validation rights.

The District Court in *Sims* did not agree with the plaintiffs' allegations.  The court stated:

> Plaintiffs claim that such statements are deceptive because they imply that only full payment will stop collection activity, when in reality, all collection activity must stop if the debtor requests verification of the debt during the validation period.  15 U.S.C. § 1692g(b).  While the Court agrees that all collection activity must stop if the debtor requests validation, it does not agree that the above requests for payment are deceptive.
>
> . . .
>
> However, this is not to say that a debt collector cannot ask for full payment.  Nothing in the FDCPA states that a debt collector is forbidden from attempting to collect a debt, and [other Seventh Circuit cases] require only that the debt collector explain the appearance of a conflict between a demand for payment during the validation period and the requirement that all collection activity must cease if the debtor demands verification during the validation period.  But here*, there is no conflict or appearance of a conflict between the required notice and the payment demand, as there is no demand for payment "immediately" or at any time within the thirty-day validation period.  GCS simply and truthfully states (without mincing words) that unless payment is made GCS will continue to seek payment.*

2005 U.S. Dist LEXIS 41878, at *9, 10-11 (emphasis added).  The plaintiffs appealed the court's ruling to the Seventh Circuit.  In affirming the lower court's decision, the Seventh Circuit stated:

> *The statement that the collection agency would continue with collection efforts until the matter is handled does not obscure the debtor's statutory entitlement to a 30-day period in which to dispute the debt.* . . . In fact, we have held that such language "is in the nature of puffing, in the sense of rhetoric designed to create a mood rather than convey concrete information or misinformation . . ." *Taylor*, 365 F.3d at 575-76.  Of course debt collectors will continue with collection efforts until the debt is paid since, after all, that is their business.   But the validation notice gives consumers a specific process to follow in order to dispute the debt.

445 F.3d at 965 (emphasis added).  Just like the letter in *Sims*, the letter Plaintiffs received simply states a truism—a debt collector will try to collect a debt.  Stating this does not change the fact that the consumer has the right to dispute and validate the debt.

In *Omaraie v. A. Alliance Collection Agency, Inc.*, No. 06cv1727, 2007 U.S. Dist. LEXIS 61617 (N.D. Ill. Aug. 21, 2007), the court ruled that the statement "Collection proceedings will be instituted as soon as possible notwithstanding this notice," did not overshadow or contradict the validation rights.  The *Omaraie* court stated:

> Here, the letter contains both (1) the required statement that Omaraie has 30 days to dispute the validity of the debt and (2) a statement that "[c]ollection proceedings will be instituted as soon as possible notwithstanding this notice."  It is the second statement that the plaintiff argues is confusing.

> It is important to understand, however, that the 30-day period is not a grace period. . . . "[A] debt collector is 'perfectly free' to demand payment and pursue collection efforts, including an appropriate lawsuit against the debtor, within the validation period.  Thus, during the validation period, the debtor's right to dispute coexists with the debt collector's right to collect.  This coexistence has created a breeding ground for claims of unsophisticated-debtor confusion."  *Durkin*, 406 F.3d at 416.  *The mere fact, then, that the collection letter mentions actions that will be taken within those 30 days does not mean the letter is necessarily confusing.*

> . . .

> The letter at issue in this case states "[c]ollection proceedings will be instituted as soon as possible notwithstanding this notice" in a letter that also contains the validation notice.  This Court finds that this language alone will not entitle the plaintiff to summary judgment.  *"Collection proceedings will be instituted as soon as possible" is not a demand for payment within 30 days.  Therefore, it is not "entirely inconsistent" with the validation notice, and it is not "clear" on the face of the letter that the presence of the statement in the letter containing the validation notice is confusing to the unsophisticated consumer.*

2007 U.S. Dist. LEXIS 61617, at *9-10, 13 (emphasis added).

13

The letter in *Omaraie* informed the debtor that notwithstanding the validation notice, the collector will continue with collection.  Moreover, in *Omaraie*, the allegedly offensive statement appeared in the first paragraph of the letter whereas the validation notice appeared on the reverse side of the letter.  In other words, the first thing the consumer sees is that no matter what, the debt collector is coming for the debt as soon as possible.  Yet, the court found that this did not overshadow or contradict the validation rights.  In contrast to the *Omaraie* letter, the allegedly offensive sentence in Plaintiffs' letter appears alongside the validation notice and does not even have language similar to *Omaraie*'s "notwithstanding this notice."  If the *Omaraie* letter did not overshadow or contradict, neither does Plaintiffs' letter.

For purposes of comparison, the contested language from *Sims*, *Omaraie*, and this case is as follows:

|  | CONTESTED LANGUAGE | COURT RULING |
|---|---|---|
| *Sims* | If you do not make full payment or call us . . . we will continue with scheduled collection efforts per our obligation to MCI. . . . We intend to continue with collection efforts until this matter is handled. | No FDCPA violation |
| *Omaraie* | Collection proceedings will be instituted as soon as possible notwithstanding this notice. | No FDCPA violation |
| *McCormick* | Please be advised that during the thirty (30) day period, this firm will not delay or cease with its collection of the debt. |  |

From a qualitative perspective, the letters in *Omaraie* and *Sims* were even more adamant and hostile to the consumer than Plaintiffs' letter.  Yet, the courts found that the letters did not overshadow or contradict the consumer's validation rights because they did not demand immediate payment or obscure the consumer's validation rights in any way.  The same is true of Plaintiffs' letter.

      **d.**      **Omitting the Disputed Language May Lead to Consumer Confusion.**

A creditor may proceed with collection efforts during the thirty-day period. Therefore, the language in the letter is nothing more than a statement of the truth. Moreover, omitting that language from the letter might confuse the least sophisticated consumer.

Several courts have indicated that a debtor may have a viable overshadowing/contradiction claim if the creditor, during the thirty-day period, proceeds with collection efforts in a way that could be interpreted by the least sophisticated consumer as meaning that he actually has less than thirty days to validate the debt. *See, e.g. Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 659 (S.D.N.Y. 2006) ("Nothing in the FDCPA prevents a debt collector that has not received a request for validation or other reply from a consumer from continuing to attempt to collect the debt during the 30-day validation period, *provided that, in so doing, it does not create the impression that the consumer has less than 30 days in which to dispute the debt.*") (emphasis added); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1132 (N.D. Ill. 1998) (stating that although "a debt collector need not suspend collection efforts during the validation period, *these efforts run afoul of the FDCPA if they create an unexplained contradiction that confuses the debtor.*") (emphasis added).

Adopting Plaintiffs' position would place debt collectors in an untenable "damned if you do, damned if you don't" quandary. If the collector does not include the clarification but proceeds with collection efforts, it could be subject to an FDCPA claim according to the above-cited cases. Yet, if the collector includes the clarification, it would be subject to an FDCPA claim if Plaintiffs have their way. The only way to avoid this problem would require the collector to simply sit on the debt collection sidelines for the thirty-day period, thereby turning the validation period into a grace period. The cases are clear that it is not a grace period and the

FDCPA does not intend to make it so.  It is for this very reason that the courts that have addressed a claim like Plaintiffs' have found that language similar to that found in Plaintiffs' letter does not violate the FDCPA.

In summary, Plaintiffs' FDCPA claims fail for several reasons.  First, the letter does not contradict any right to seek oral verification of the debt because there is no right to oral verification.  Second, the disputed language does not substantively contradict the Plaintiffs' thirty-day validation right.  Third, the presentation of the disputed language does not overshadow or obscure the FDCPA validation notice.  For these reasons, Count I must be dismissed.

**C.      Count III Should Be Dismissed.**

In Count III of the Amended Complaint, Plaintiffs take issue with the allegedly pernicious effects of the practice of substituting an "out-of-state" trustee[12] on a Deed of Trust. Such substitution of trustees, according to Plaintiffs, constitutes unconscionable conduct in the collection of a debt.  At the risk of being too blunt, Plaintiffs' claim in Count III is utterly preposterous and should, therefore, be dismissed.

The Deed of Trust executed by Plaintiffs in favor of Wells Fargo contains the following language:

> 27.  **Trustees and Substitution of Trustees.**  It is hereby expressly covenanted and agreed to [sic] all parties hereto that Lender may, at any time and from time to time hereafter, without notice, appoint and substitute another Trustee or Trustees, corporations or person, in place of the Trustee herein named to execute the trust herein created. . . .

Ex. 3, at 17 [hereinafter the "SOT Provision"].  Despite the language in the SOT Provision allowing the lender to substitute anyone as trustee, Plaintiffs claim that Wells Fargo's practice of

---

[12]      West Virginia Code Sections 38-1A-2 through 38-1A-5 deal specifically with trustee sales by nonresident trustees.  Tellingly, Plaintiffs' complaint about nonresident trustee finds no basis in the portion of the Code dealing with nonresident trustees.

doing so violates the law.  As discussed below, Plaintiffs' legal theory fails as a matter of law because: (1) the substitution of trustees was not illegal; (2) Plaintiffs do not allege that the SOT Provision is void or unenforceable; (3) Plaintiffs' allegations do not present an actual controversy and do not allege any damage; and (4) Plaintiffs' counsel specifically sought enactment of a bill that would have rendered the SOT Provision void, but that legislation failed.

1.      **The Substitution of Trustee is Not Illegal.**

Plaintiffs rest their claim in Count III on Section 44-14-1(b) of the West Virginia Code.  Section 44-14-1(b) states in its entirety as follows:

> **(b)** As an alternative to the method of substitution provided for in subsection (a) [substitution by court on motion by party] of this section, **in the case of a trust deed to secure a debt or obligation if the trust deed does not by its terms prescribe a method for substitution**, *the party secured by the trust deed, or any surety indemnified by the deed, or the assignee or personal representative of any such secured party or surety has the authority, in the event of such death, removal, declination, resignation, refusal or inability* as is described in subsection (a), *to substitute a trustee or trustees in the place of the trustee or trustees named in such instrument, independent of any court action otherwise required* by the provisions of subsection (a).

W. Va. Code § 44-14-1(a), (b).  Plaintiffs cherry-pick from the statute by quoting only the portions italicized above and, importantly, omit the bolded portion that speaks directly to a deed of trust containing terms for substitution of trustee.  Plaintiffs then go on to assert that, in light of the part of the statute they chose to highlight, the practice of substituting SIWPC attorneys as trustees under a Deed of Trust, without first showing that the original trustee is unable or unwilling to serve, is somehow illegal.  There are so many problems with this theory, it is difficult to know where to begin.

The most compelling flaw in Plaintiffs' reliance upon Section 44-14-1 is the fact that the Supreme Court of West Virginia has held that Section to be completely inapplicable to

the facts alleged in Plaintiffs' Amended Complaint.  In *Bond v. Bond*, 592 S.E.2d 801 (W. Va.

2003), a case involving a trust document that was silent on the method and reasons for

substituting a trustee, the Court stated:

> we conclude that the purpose of W.Va. Code § 44-14-1 is to
> provide, *in the absence of applicable language in the trust
> instrument*, for the appointment of a replacement trustee or trustees
> *where such an appointment is required to prevent the failure of the
> trust*.  This construction of W.Va. Code § 44-14-1 is in harmony
> with our common law rule favoring the settlor's intent as well as
> other statutes of the same subject matter.
>
> In the instant case, express language in the settlor's will provides
> for the management of the trust if one or more co-trustees resign.
> *In addition, the appointment of replacement trustees was not
> required to prevent the failure of the trust.  Therefore, we find that
> W.Va. Code § 44-14-1 has no applicability to the instant facts.*

*Bond*, 592 S.E.2d at 808.  In other words, Section 44-14-1 only applies in instances where a trust

is in danger of failing due to lack of a willing or able trustee.  In such an instance, Section 44-14-

1 sets forth the manner in which a new trustee can be appointed.  However, it does not follow

that this is the *only* instance in which a trustee may be substituted.  When, as is true of the instant

case, the trust does not suffer from an unwilling or incapable trustee, Section 44-14-1 plays no

role.  Plaintiffs have not alleged that the original trustee was unwilling or incapable to perform

his function.  Thus, by virtue of the holding in *Bond*, Section 44-14-1 has no bearing on this case.

Another case from the Supreme Court of West Virginia also poses serious

problems for Count III.  *Hafer v. Skinner*, 542 S.E.2d 852 (W. Va. 2000) involved a substitution

of trustee provision in a deed of trust materially identical to the SOT Provision in Plaintiffs'

Deed of Trust.  The provision in *Hafer* read as follows:

> **20. Substitute Trustee.** Lender at its option may from time to
> time, without notice, remove any person or persons herein or
> hereafter designated as Trustee and appoint a successor Trustee to

> any Trustee appointed herein or hereafter by an instrument recorded in any County in which this Deed of Trust is recorded. . .

542 S.E.2d at 853.  The plaintiff in *Hafer* was taking issue with the method by which a trustee's sale of his property occurred under the direction of a substitute trustee.  Like the SOT Provision, the provision in *Hafer* allowed the Lender to remove the current trustee and appoint a new trustee at any time, without notice, and without any determination that the current trustee was unwilling or unable to perform his function.  The Supreme Court expressed absolutely no concern about this provision.  Rather, the Court explicitly stated "since the deed of trust by its own terms prescribed a method of substitution, the Court believes that the validity of the substitution is governed by those terms."  *Id.* at 855.

## 2. __Plaintiffs Do Not Allege that the SOT Provision is Void__

Quite surprisingly, Plaintiffs do not take issue with the contractual provision that allows Wells Fargo to substitute the trustee of the Deed of Trust.  Indeed, in Count III, Plaintiffs do not even acknowledge that the Deed of Trust exists.[13]  Instead, Plaintiffs portray the substitution of trustee as a blind-side invasion by the foreign hordes.[14]  However, given that Count III is really about Wells Fargo's decision to exercise its rights under the Deed of Trust, Count III is inadequately pled because it does not provide Defendants or the Court adequate notice of what really is at issue, the provision in the Deed of Trust or the actual manner in which the substitution of trustee occurred.

---

[13]     The Plaintiffs do acknowledge the Deed of Trust in Paragraph 8 of the Amended Complaint when they want to use its language for their benefit.  However, they neglect to attach the Deed of Trust to the Amended Complaint or to inform the Court of the SOT Provision, which is obviously salient to the claim in Count III.

[14]     In point of fact, all of the SIWPC attorneys named as substitute trustees under the Deed of Trust are residents of West Virginia and licensed to practice law in West Virginia.

3.      **Count III Fails to Allege a True Controversy or a Plausible Claim of Damage**

In Count III of the Amended Complaint, Plaintiffs allege that they "were damaged by the Defendant's improper substitution of trustee when they are [sic] forced to deal with an out-of-state trustee that is not accessible or receptive to the Plaintiffs." (Am. Compl. ¶ 33(a).)  In other words, Plaintiffs allege *when* they were allegedly damaged, but give no insight into *how* they were damaged.  As such, Plaintiffs' claim of damage is a mere label or legal conclusion, unsupported by any factual allegation.

One would expect the damage from a supposedly improper substitution of a foreclosure trustee to have something to do with foreclosure.  Yet, Plaintiffs never allege that a foreclosure ever occurred.  This is because a foreclosure never occurred.  All of the allegations of wrongdoing leveled against SIWPC arise out of attempts to collect the debt the Plaintiffs owe to Wells Fargo.  (*See* Am. Compl. ¶ 33(a), (b) and Count III Prayer for Relief (b) (complaining of SIWPC's interactions with Plaintiffs).)  The Amended Complaint alleges that Plaintiffs contacted SIWPC in response to the letter, not in response to the substitution of SIWPC attorneys as trustees of the Deed of Trust.  Nothing happened as a result of the substitution of trustee, thus there is no case or controversy here.

Moreover, in Plaintiffs' prayer for relief in Count III, they simply request that Wells Fargo be enjoined from substituting trustees in the future and that the Court declare that SIWPC interfered with Plaintiffs' right to reinstate their loan.  In sum, Plaintiffs allege no substantive damage and do not seek recompense for any substantive damage.

4.      **Legislation That Would Have Outlawed the Substitution of Trustees Failed to Pass**

In early 2008, materially identical legislation was proposed in the West Virginia Senate and House of Delegates that would have rendered unlawful the practices of which

Plaintiffs now complain.  (*See* Senate Bill No. 203, attached as <u>Exhibit 5</u> *and* House Bill 4563, attached as <u>Exhibit 6</u>.)  Upon information and belief, Plaintiffs' counsel was heavily involved in the drafting of this proposed legislation.  However, this legislation did not pass.  It necessarily follows, then, that if new legislation is required to make substitution of trustees illegal, such action is not currently illegal.  This fact only further explains why Count III fails.

## IV.    <u>CONCLUSION</u>

As set forth above, Plaintiffs' claim in Count I fails as a matter of law.  Plaintiffs' had no right to oral verification of their debt, therefore the dunning letter could not have contradicted a right that does not exist.  With regard to the sentence the allegedly overshadows Plaintiffs' validation rights, the courts that have addressed similar language hold that stating that debt collection will continue during the validation period does not violate the FDCPA.  For these reasons, Count I should be dismissed.  Count III fails because, as Plaintiffs' counsel is well aware, West Virginia law does not prohibit the substitution of trustee in accordance with the terms of the Deed of Trust.  Therefore, Count III also should be dismissed.


SAMUEL I. WHITE, P.C.


By: _____/s/ John C. Lynch_____
                        Of Counsel

John C. Lynch, Esquire (W.V. Bar # 6627)
Counsel for Defendant Samuel I. White, P.C.
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com

Chris R. Arthur (W.V. Bar No. 9192)
Counsel for Defendant Samuel I. White, P.C.
Samuel I. White, P.C.
The Kanawha Valley Building
300 Capitol Street, Suite 1600
Charleston, WV  25301
Phone:  (304) 414-0200
Facsimile:  (304) 414-0202
E-mail: carthur@siwpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

**Counsel for Plaintiffs**
**John McCormick and Alice McCormick**
Daniel F. Hedges
Bren J. Pomponio
Sara Bird
Mountain State Justice
1031 Quarrier Street, Suite 200
Charleston, West Virginia 25301
dan@msjlaw.org
bren@msjlaw.org
sara@msjlaw.org

**Counsel for Defendant Wells Fargo Bank**
**d/b/a Wells Fargo Home Mortgage**
William W. Booker
Kay Casto & Chaney PLLC
P.O. Box 2031
Charleston, WV 25327
b.booker@kaycasto.com

_____/s/ John C. Lynch_____
John C. Lynch, Esquire (W.V. Bar # 6627)
Counsel for Defendant Samuel I. White, P.C.
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com

367350_1.DOC