**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JOHN MCCORMICK and
ALICE MCCORMICK, on behalf of
all other individuals similarly situated,

                              Plaintiffs,

v.                                                              CIVIL  ACTION  NO.  3:08-0944

WELLS FARGO BANK d/b/a
WELLS FARGO HOME MORTGAGE,
and SAMUEL I. WHITE, P.C.,

                              Defendants.

**MEMORANDUM OPINION AND ORDER**

        Pending before the Court is Defendant Samuel I. White, P.C.'s (SIWPC) Motion to Dismiss

Counts I and III of Plaintiffs' Amended Complaint for  failure to state a claim upon which relief

may be granted.  For the reasons set forth below, the Motion to Dismiss (Doc. 10)  is **GRANTED**

and Counts I and III are **DISMISSED** with prejudice as to both Defendants, SIWPC and Wells

Fargo Bank (Wells Fargo).[1]

        Additionally, because Count I is the class claim, the Plaintiffs' Motion to Certify Class

(Doc. 30) is hereby **DENIED** as moot.

_____

        [1] Wells Fargo did not file a motion to dismiss Count III.  Nonetheless, the Court has ruled
*sua sponte* to dismiss Count III as to Wells Fargo because the Plaintiffs have failed to state a claim
upon which relief may be granted.  Additionally, Wells Fargo is not a named Defendant in Count
I, therefore, as a result of this order, Count I is also dismissed in its entirety.

## I. FACTS

Plaintiffs John and Alice McCormick (Plaintiffs) purchased a home in 2004 for $40,000. They obtained an adjustable rate mortgage loan (ARM) from Wells Fargo for $45,000, and refinanced into a second ARM the following year. Eventually, the Plaintiffs' house payments increased and they fell behind on payments.  On April 8, 2008, Wells Fargo substituted the original trustee with "Fabio Crichigno and/or Sarah Crichigno and/or Christopher R. Arthur and/or Amy J. Haynie, any of whom may act, individually as Trustees in the place and stead of the said Trustee herein removed."  The substitution was filed with the Cabell County Clerk.  The following letter, dated April 15, 2008 and titled "Wells Fargo Home Mortgage," was sent to Plaintiffs by SIWPC:

> Dear Property Owner:
>
> Pursuant to the Federal Fair Debt Collection Practices Act, we advise you that this firm is a debt collector attempting to collect the indebtedness referred to herein and any information we obtain from you will be used for that purpose.  As of the date of this letter, you owe **$55,319.82**.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  For further information, write the undersigned or call 1-757-490-9284.  The debt is owed to the creditor; and unless you, within thirty (30) days after receipt of this notice, dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid by this firm.  If you notify this firm in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, this firm will obtain verification of the debt and a copy of such verification will be mailed to you by this firm.  Upon your written request within the thirty (30) day period, this firm will provide you with a name and address of the original creditor, if different from the current creditor.  **PLEASE BE ADVISED THAT DURING THE THIRTY (30) DAY PERIOD, THIS FIRM WILL NOT DELAY OR CEASE WITH ITS COLLECTION OF THE DEBT.**

This appeared on the front of the two-page letter.  The back page alerted the Plaintiffs to

-2-

contact an attorney if they did not understand the meaning of the notice, and gave them phone numbers to call if they intended to reinstate or pay off the loan.  It also included notices regarding the Soldiers and Sailors' Civil Relief Act, the Federal Housing Administration, the Veterans Administration, Bankruptcy proceedings and information regarding any potential Notice to Vacate should any of those situations apply to the Plaintiffs.  It was signed, "Very truly yours, SAMUEL I. WHITE, P.C."

## II.  LEGAL STANDARD

When reviewing a motion to dismiss, a court should construe factual allegations "in the light most favorable to the plaintiff."  *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must be enough to raise a right to relief above the speculative level and must provide enough facts to state a claim to relief that is plausible on its face." *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)) (internal quotations omitted).

## III.  DISCUSSION

### A.  Count I - Violation of Fair Debt Collection Practices Act (Class Claim)

### 1.  Question of Law

In Count I of the amended complaint, the Plaintiffs allege the dunning letter[2] sent by SIWPC violates the Fair Debt Collection Practices Act (FDCPA), specifically 15 U.S.C. § 1692g, because it contradicts or overshadows the validation rights required by the FDCPA.  SIWPC denies such an assertion, and has asked this Court to rule on this issue as a matter of law.  Conversely, the Plaintiffs

---

[2] A dunning letter is a collection letter sent to a debtor in an attempt to collect a debt.  A portion of the dunning letter sent to the Plaintiffs is included on the second page of this Order.

argue that whether the dunning letter contradicted or overshadowed the validation rights is a question fact.  The Court disagrees with Plaintiffs' assertion.

The Fourth Circuit has never directly addressed whether the contradiction/overshadowing question is one of law or fact.  However, the majority of circuits which have ruled on the issue view it as a question of law.  *Wilson v. Quadramed Corp.*, 225 F.3d 350, 352 n.2 (3rd Cir. 2000) ("We agree with the majority that whether language in a collection letter contradicts or overshadows the validation notice is a question of law") (citing *Terran v. Kaplan*, 109 F.3d 1428, 1432-33 (9th Cir. 1997) (question of law); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33, 35 (2d Cir. 1996) (question of law); *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999) (question of fact)).

The question of contradiction/overshadowing is akin to contract disputes.[3]  When asked to interpret contracts, courts issue a ruling by looking at the language of the contract without extrinsic

---

[3] As the Ninth Circuit has explained,

> Our conclusion that the determination of whether a collection letter violates section 1692g is a question of law that we review *de novo* is buttressed by the rationale behind our *de novo* review standard for contracts and other written instruments. . . .

> When the district court's decision is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law and reviewable *de novo*.  When the inquiry focuses on extrinsic evidence of related facts, however, the trial court's conclusions will not be reversed unless they are clearly erroneous.

> Similarly, determination of whether language in a collection letter overshadows or contradicts the validation notice required by section 1692g so as to mislead or confuse a least sophisticated debtor does not turn on the credibility of extrinsic evidence.

*Terran*, 109 F.3d at 1432.

evidence.  Likewise, when the contradiction/overshadowing issue comes up in relation to dunning letters, courts look at the language of the letter without extrinsic evidence. *Terran*, 109 F.3d at 1432.

Additionally, when viewed in light of two Fourth Circuit cases, this Court is convinced the Fourth Circuit would find the contradiction/overshadowing issue a question of law.  In *Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482 (4th Cir. 1991), the Fourth Circuit found that a dunning letter demanding payment before the 30-day period provided for in the notice requirements was in violation of section 1692g.  In *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131 (4th Cir. 1996), the Fourth Circuit upheld the district court's determination that a dunning letter violated section 1692g because it demanded payment before the 30-day statutory period.  In neither case did the Fourth Circuit hold that a jury should have examined the notice to determine if it complied with the FDCPA.

Even though both cases involved summary judgment rulings, all of the Fourth Circuit's section 1692g analysis centered on one thing: the dunning letter.  Nothing in the opinions indicate that the Fourth Circuit relied on any evidence other than the dunning letters themselves to issue rulings as to the section 1692g issues in *Miller* and *Nat'l Fin*.  This Court concludes that the motion to dismiss stage is appropriate to address the issue of contradiction/overshadowing.

**2. Section 1692g Contradiction/Overshadowing**

Having decided this issue is ripe for adjudication, this Court must now answer whether the collection letter sent by SIWPC contradicted or overshadowed the Plaintiffs' section 1692g(a) validation rights.

When collecting a debt, the FDCPA requires debt collectors to send the consumer a written notice containing:

      (1) the amount of the debt;

      (2) the name of the creditor to whom the debt is owed;

      (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

      (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

      (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

    15 U.S.C. § 1692g(a).

To be adequate, the notice of validation rights "must be placed in such a way to be easily readable, and must be prominent enough to be noticed by an unsophisticated consumer. The notice also must not be overshadowed or contradicted by other messages." *Nat'l Fin. Servs.*, 98 F.3d at 139. *See also Miller*, 943 F.2d at 484 (citing *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). The letter sent by SIWPC must be analyzed in this light.

    First, SIWPC's dunning letter addresses each of the five requirements in section 1692g. This is not in dispute. Plaintiffs' main allegation is that the last sentence on page one, "**PLEASE BE ADVISED THAT DURING THE THIRTY (30) DAY PERIOD, THIS FIRM WILL NOT DELAY OR CEASE WITH ITS COLLECTION OF THE DEBT,**" contradicts or overshadows the notice requirements in section 1692g(a). SIWPC maintains that this sentence is mere fact under section 1692g(b), which allows debt collectors to continue with the collection of the debt during the

30-day period unless the consumer elects to exercise her section 1692g(a) rights.  This Court is persuaded by SIWPC's assertion.

The rationale behind the decisions in both Fourth Circuits cases, *Miller* and *Nat'l Fin. Servs.*, hinged on the contradiction between the 30-day validation period in the statute and the call for some type of "immediate" or earlier payment in the dunning letters.  SIWPC's dunning letter does not create this contradiction.  Other than being in bold and capital letters, there is nothing else in the letter that raises red flags, such as formatting issues obscuring the statement of validation rights or words contradicting the validation rights.[4]

In essence, the heart of the problem is that the Plaintiffs are not being made aware that the collection process will temporarily stop if they exercise their section 1692g(a) rights for verification. However, the statute is very clear about what is required in the written notice.  15 U.S.C. § 1692g(a). Alerting consumers of their right to stop the collection process is not one of the five enumerated rights Congress has required debt collectors to include in the dunning letters.  This Court is well aware that some courts, including the Seventh Circuit, have drafted sample dunning letters that provide safe harbor transitional language letting the consumer know the collection process will stop if she exercises her validation rights.  *Bartlett v. Heibl*, 128 F.3d 497, 501-02 (7th Cir. 1997).  While

---

[4] The Plaintiffs also argue the sentence that they may call SIWPC "at your expense" contradicts an oral right to verification or dispute.  While there is no oral right to verification, courts disagree as to whether there is an oral right to dispute.  However, for the sake of argument, even if there is an oral right to dispute, there is nothing contradicting about the phrase "at your expense" in relation to the section 1692g(a) rights.  The Court finds that "at your expense" simply means Plaintiffs could call the phone number provided in the letter, which purports to be outside of the local calling area.

the Seventh Circuit's position is reasonable, this Court does not have the authority to require such transitional language.[5]  To do so would be writing words into the statute.

 In light of both Fourth Circuit cases which focused on the dunning letters' request for some type of immediate payment, and in the absence of any demand for immediate payment in the SIWPC dunning letter, there is nothing in the letter itself that literally contradicts or overshadows the debtors' rights.

Additionally, when viewed in light of section 1692g decisions in other jurisdictions, the finding that SIWPC's letter did not violate section 1692g is bolstered.   In *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002), the Fifth Circuit held that a letter informing the debtor that collection activity would continue until the debt was fully paid did not contradict language in the validation notice.  The two sentences at dispute in *Peter* were: "FULL COLLECTION ACTIVITY WILL CONTINUE UNTIL THIS ACCOUNT IS PAID IN FULL. . . . TO AVOID FURTHER

---

[5] The Second Circuit has also found that failure to include "transitional language" can be a violation of section 1692g in some instances.  *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998).  The Second Circuit reasoned that "the violation of the Act consisted of [defendant's] decision to ask for immediate payment without also explaining that its demand did not override the consumer's rights under Section 1692g to seek validation of the debt." *Id.*

However, *Savino* is distinguishable from Plaintiffs' case because it involved a literal contradiction of an enumerated section 1692g(a) right, which doesn't exist in Plaintiffs' case.  The transitional language in *Savino* was required to avoid the literal contradiction between the demand for "immediate payment" and the actual enumerated section 1692g(a) notice requirement for a 30-day period to exercise the validation rights.  *Id.*

In Plaintiffs' case, there is no such contradiction of an enumerated section 1692g(a) right. Even though a consumer, by exercising her section 1692g(a) rights, can cause the debt collection process to temporarily cease pursuant to section 1692g(b), the debtor collector is under no statutory mandate to inform the consumer of this fact.  Thus, in Plaintiffs' case, there is no contradiction of section 1692g(a) rights that required SIWPC to include explanatory transitional language in its dunning letter.

-8-

COLLECTION ACTIVITY, YOUR STUDENT LOAN MUST BE PAID IN FULL." *Id.* at 349. The Fifth Circuit reasoned that most contradiction findings involve letters that request payment in a "concrete period shorter than the 30-day statutory contest period." *Id.* Because the *Peter* letter did not specify a concrete time period, the Fifth Circuit found that it did not contradict the section 1692g notice. Furthermore, the plaintiff in *Peter* urged the court to follow an unpublished district court opinion from New York. In that case, the dunning letter was found to be in violation of section 1692g because it failed to inform the consumer that the collection process would be halted if the consumer exercised its validation rights. *Id.* at 350, n.3. The Fifth Circuit's response echos this Court's reasoning today: "[T]here is no statutory requirement that collectors inform debtors that collection activity will stop pending the collectors response to the debtor's request for additional information on the debt or the original creditor." *Id.* Put another way, Congress did not require debt collectors to inform consumers of section 1692g(b) rights in dunning letters, therefore, there is no violation of section 1692g(a) if debt collectors do not include section 1692g(b) rights in the dunning letters.

SIWPC's dunning letter is even less controversial than non-violative letters in two recent cases arising out of district courts in Illinois. In *Sims v. GC Servs. L.P.*, 445 F.3d 959 (7th Cir. 2006), the Seventh Circuit upheld a district court's finding that there was no section 1692g violation in a letter stating the debt collector would continue with its collection efforts. The letter stated, in part:

> If you do not make full payment or call us . . . we will continue with scheduled collection efforts per our obligation to MCI. It is in your best interest to forward your payment. . . . We intend to continue with collection efforts until this matter is handled. Fulfill your obligation and forward your payment.

*Sims v. GC Servs. L.P.*, 2005 WL 3988380, *3 (C.D. Ill. 2005) (unreported).  The Seventh Circuit reasoned that such language "does not obscure the debtor's statutory entitlement to a 30-day period in which to dispute the debt."  *Sims*, 445 F.3d at 965.

Moreover, when considering the dunning letter statement, "[c]ollection proceedings will be instituted as soon as possible notwithstanding this notice," another Illinois district court held that it did not constitute a section 1692g contradiction/overshadowing violation.  *Omaraie v. A. Alliance Collection Agency, Inc.*, 2007 WL 2409794, *1, *5 (N.D. Ill. 2007) (unreported).  In reaching its decision, the court stated "[t]he mere fact [] that the collection letter mentions actions that will be taken within those 30 days does not mean the letter is necessarily confusing."  *Id.* at *3.

When all of the above factors are taken as a whole, it becomes apparent that SIWPC's dunning letter did not violate 15 U.S.C. § 1692g because it did not contradict or overshadow the section 1692g(a) validation rights.  Therefore, Count I of the amended complaint is dismissed.

Additionally, because Count I contains the class claim, the Plaintiffs' Motion to Certify Class must be denied as moot.

### B.  Count III - Illegal Debt Collection by Substitution Without Justification

Next, SIWPC contends that Count III of Plaintiffs' amended compliant fails to state a claim. The Court agrees.  While the Plaintiffs have included sub-counts within Count III alleging breach of the duty of good faith and unconscionable conduct for the alleged improper substitution of the original trustee, the Court finds that Count III read in its entirety is limited only to the alleged illegal substitution of the original trustee without justification.  Because the parties have agreed to allow the debtor to unilaterally change the trustee through the terms of the deed of trust, Count III fails to state a claim.

The deed of trust reads in part,

> **27. Trustees and Substitution of Trustees.** It is hereby expressly covenanted and agreed to all parties hereto that Lender may, at any time and from time to time hereafter, without notice, appoint and substitute another Trustee or Trustees, corporations or person, in place of the Trustee herein named to execute the trust herein created.

Plaintiffs do not dispute the validity of this provision, but instead argue that W.Va. Code § 44-14-1 provides a justification pre-requisite that must be followed before a trustee can be substituted. This, however, is a misinterpretation of the statute.

As the West Virginia Supreme Court of Appeals stated in Syllabus Point 4 of *Bond v. Bond*, 592 S.E.2d 801, 803 (W. Va. 2003), "[t]he purpose of W.Va. Code § 44-14-1 (1992) is to provide, *in the absence of applicable language in the trust instrument*, for the appointment of a replacement trustee or trustees where such an appointment is required to prevent the failure of the trust." (emphasis added). Here, the parties have agreed to allow the debtor to unilaterally change the trustee at any time. The statute addresses situations where the trustee cannot act. If the trustee cannot act, the statute sets forth two options: (a) the court can appoint someone or (b) the terms of the deed of trust can provide the method for appointment. There is nothing in the statute restricting the parties from reaching their own agreement. Thus, W.Va. Code § 44-14-1 has no applicability to this set of facts.

This finding is also supported by *Restatement (Second) of Trusts § 107*, which reads that a "trustee can be removed (a) by a proper court; or (b) by the person, if any, who by the terms of the trust is authorized to remove the trustee." The Plaintiffs gave Wells Fargo the unilateral authority to substitute the trustee by terms of the trust, and neither Well Fargo nor SIWPC can be punished for Wells Fargo's decision to simply exercise this contractual right.

Therefore, Count III must be dismissed as to all parties because it fails to state a claim upon which relief can be granted.

## IV.  CONCLUSION

For the reasons stated above, SIWPC's Motion to Dismiss (Doc. 10)  is **GRANTED** and Counts I and III of Plaintiffs' amended complaint are **DISMISSED** with prejudice as to both Defendants, SIWPC and Wells Fargo.  Additionally, because Count I  is the class claim, the Plaintiffs' Motion to Certify Class  (Doc. 30) is hereby **DENIED** as moot.

The Court **DIRECTS** the Clerk to send a copy of this written Memorandum Opinion and Order to counsel of record and any unrepresented parties.


ENTER:        February 26, 2009


ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE